# 440

MORRIS PLAN BANK OF NEW HAVEN
v. SMITH, Collector of Internal
Revenue.

No. 143.

Circuit Court of Appeals, Second Circuit.

Argued Dec. 4, 1941.

Decided Jan. 28, 1942.

Watrous, Gumbart & Corbin, of New Haven, Conn. (Morris Tyler, of New Haven, Conn., of counsel), for Morris Plan Bank of New Haven.

Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch and Louise Foster, Sp. Assts. to the Atty. Gen., and Robert P. Butler, U. S. Atty., and Valentine J. Sacco, Asst. U. S. Atty., both of Hartford, Conn., for defendant-appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff, a corporation organized under the laws of the State of Connecticut and at all pertinent times classified thereunder as an industrial bank, was taxed for the years 1936 and 1937 in accordance with the provisions of Sections 13 and 14 of the Revenue Act of 1936 relating to corporations, 26 U.S.C.A. Int.Rev.Acts, pages 822, 823. It paid the taxes so assessed and duly filed a claim for the refund of what it paid in excess of what it would have been assessed in accordance with the provisions of Sec. 104 of the above act, 26 U.S.C.A. Int.Rev.Acts, page 854, fixing a different rate of taxation for banks and trust companies as therein defined. The claim for refund was disallowed and this suit was brought to recover the amount so claimed. The District Court, holding that the plaintiff was not a bank within the definition of Sec. 104, entered judgment for the defendant and the plaintiff appealed.

The controlling facts are not in dispute. They show that the plaintiff, with its principal place of business at New Haven, Conn., did a business during the period here involved which consisted in substantial part in making loans and discounts and in receiving money in small payments for which it issued certificates of indebtedness in the principal sum of fifty dollars, or multiples thereof, to its customers who promised to pay in a designated sum each week. If it made a loan to one of such customers it took an assignment of its certificates of indebtedness issued to that borrower as collateral security for the loan. A substantial part of the plaintiff's business, moreover, consisted of the receipt of such weekly installment pay-

ments for which it issued its certificates of indebtedness which were not assigned as collateral security for loans. The holder of certificates not assigned was entitled to pay in more or less at a time than as provided in the certificate but if, in the aggregate, the payments fell below the amount agreed upon, the plaintiff could elect to take up the certificate and discharge its liability to the holder in full by returning the amount of the payments it had actually received. The holder could, before the certificate had been recalled, withdraw what he had paid in, in whole or in part at any time, subject to some limitations the·plaintiff might impose including a thirty-day notice. Whenever a certificate was fully paid, it could be converted into an interest bearing obligation of the plaintiff with a retention by the holder of the same right of withdrawal. The business of the plaintiff was subject by law to the supervision of the state authority having supervision over banking institutions. It is conceded that it exercised no fiduciary powers similar to those permitted to national banks under section 11(k) of the Federal Reserve Act, 12 U.S.C.A. § 248(k).

Sec. 104(a) of the Revenue Act of 1936 which establishes the rate of tax which the plaintiff contends should have been applied in the assessments for the years involved defines a "bank" to which those rates shall be applied as follows: "Definition. As used in this section the term 'bank' means a bank or trust company incorporated and doing business under the laws of the United·States (including laws relating to the District of Columbia), of any State, or of any Territory, a substantial part of the business of which consists of receiving deposits and · making loans and discounts, or of exercising fiduciary powers similar to those permitted to national banks under section 11(k) of the Federal Reserve Act, as amended, and which is subject by law to supervision and examination by State or Federal authority having supervision over banking institutions."

The plaintiff was, during the years in question, plainly enough a bank as above defined if a substantial part of its business consisted of receiving deposits, for in other essential respects it admittedly fell within the definition. Nor was there any question but that a substantial part of its business consisted in the receipt of install-

ment payments for which it issued the above described certificates of indebtedness which were never assigned to it as collateral security for loans. If the receipt of these payments was the receipt of deposits, therefore, the plaintiff was a bank as defined.

If the state law were decisive they could not be so treated for, after the plaintiff became an industrial bank under the laws of Connecticut, it was forbidden by that law to receive money on deposit though it was authorized by Sec. 4034 of the General Statutes of Connecticut, Revision of 1930, as amended, to sell certificates of indebtedness either fully paid or on the installment plan. But names are not what control. Morgan v. Commissioner, 309 U.S. 78, 81, 626, 60 S.Ct. 424, 84 L.Ed. 585. Realities do. The plaintiff took these payments under agreements which made them a part of its general funds and created only the relationship of debtor and creditor between it and the payer. It issued the certificates of indebtedness in form similar to that of deposit books used by savings banks. Payments and withdrawals were entered in them and these accounts were active. In 1936, $200,-645.50 were paid in and $137,935.92 withdrawn. In 1937 the corresponding figures were $223,090.33 and $187,427.58. Whether such payments are distinguished from deposits under state law is not controlling in construing a federal taxing statute which does not expressly or by necessary implication make its application dependent upon what the law ¡of a state may provide. Were it otherwise the varying laws of the states might well make impossible general uniformity of national taxation throughout the country. United States v. Pelzer, 312 U.S. 399, 61 S.Ct. 659, 85 L.Ed. 913.

The learned trial judge did not take the view that the payments made to acquire the certificates which were unassigned could not be considered deposits under Sec. 104 because under the state law they were not regarded as deposits. He was of the opinion that they were not deposits within the meaning of that term as used in Sec. 104 because they were made in the performance of a contractual obligation which made them indistinguishable "from part payments made by an investor to his broker or investment banker on the price of an investment." But that depends upon what is meant by "invest-

ment." If, as here, the "investment" is but a certificate entitling the investor to withdraw his money in a way essentially like the depositor in a savings bank may withdraw his and meanwhile to have it earn interest if, and as, the agreement provides, part payments might well be called deposits though, of course, a broker might not for other reasons fall within the statutory definition of a bank. It is not what obligation is discharged, if any, by the one who pays in which is decisive but rather what obligations on the part of the receiver, if any, come into being upon the receipt of what is paid in. And these payments were received and held in so many respects as are savings banks deposits that unless the legislative history of Sec. 104 shows that Congress did not intend to include them within the term as there used, they should be so included because within the usual meaning of the word.

A glance at such history leads to the conclusion that the plaintiff is within the class of corporations which Congress desired to tax in a way deemed wise in respect to banks. Whether those to whom it issued certificates of indebtedness and who held such certificates unassigned are called investors or depositors or something else and whether what they paid in might be given corresponding names does not change the fact that practically the same reasons which would make it advisable to permit banks to acquire and maintain financial strength for the protection of their depositors apply to this plaintiff as well. What Congress intended to accomplish in enacting Sec. 104 is shown by the following excerpt from the Report of the Committee on Ways and Means, H.R. § 2475, 75th Congress;—"Banks and trust companies are not brought within the new plan, but pay a flat rate of 15 per cent on their net income and domestic corporations in receivership are treated in the same manner. This seems to be a wise policy, since the surplus of banks must be built up for the protection of depositors and because receiverships in the vast majority of cases cannot, of course, pay dividends."

We conclude that the plaintiff is, therefore, a bank within the meaning of Sec. 104 of the Revenue Act of 1936 and entitled to be taxed accordingly. Compare, Staunton Industrial Loan Corporation v. Commissioner, 4 Cir., 120 F.2d 930.

Judgment reversed.